Richmond

## BOBBY JOE CUMBEE

v.

## COMMONWEALTH OF VIRGINIA

April 20, 1979.

Record No. 781091.

Present: I'Anson, C.J., Carrico, Harrison, Cochran, Poff and Compton, JJ.

*James E. Cornwell, Jr.* (*Warren, Cornwell & Gibb, P.C.,* on brief) for appellant.

*Guy W. Horsley, Jr., Assistant Attorney General (Marshall Coleman, Attorney General,* on brief), for appellee.

COMPTON, J., delivered the opinion of the Court.

Indicted for committing fornication with his fourteen-year-old daughter, Bobby Joe Cumbee was found guilty by a jury and sentenced in accordance with the verdict to confinement in the penitentiary for a term of five years. The principal issue on appeal is whether defendant's constitutional right to a public trial was abridged.

At the beginning of the trial and before the first witness, the victim, had begun to testify, the prosecutor stated:

> Your Honor, I moved to exclude the witnesses and I now ask that the spectators be removed from the courtroom due to the victim being a juvenile and this being an incest case, a

> case of such a nature that at least while the
> victim is testifying that the spectators be ex-
> cluded from the courtroom.

Arguing that he had a right to a public trial, defendant opposed the motion. In granting the motion, the trial court stated:

> In view of the type of case we are about to
> consider, the court will order the courtroom
> cleared of any spectators.

Thereafter and for the remainder of the trial, all persons except the actual participants in the proceedings were barred from the courtroom. Defendant made no subsequent request to have the exclusion order modified or vacated.

Article I, Section 8 of the Constitution of Virginia and the Sixth Amendment of the Federal Constitution specify that in criminal prosecutions the accused "shall enjoy the right to a speedy and public trial . . . ." The Sixth Amendment right is applicable to the states through the Fourteenth Amendment. *Jones* v. *Peyton*, 208 Va. 378, 380, 158 S.E.2d 179, 180 (1967). Code § 19.2-266 provides that in all criminal cases, "the court may, in its discretion, exclude from the trial any persons whose presence would impair the conduct of a fair trial, provided that the right of the accused to a public trial shall not be violated." We have said that the word "persons" in the statute applies primarily to spectators. *Johnson* v. *Commonwealth*, 217 Va. 682, 683, 232 S.E.2d 741, 742 (1977).

Relying on the foregoing constitutional and statutory provisions, the Attorney General argues that the right to a public trial is not absolute. He contends that the action of the trial court in excluding the public during the testimony of the victim was "appropriate and supportable" under case law which he cites. He contends that it was thus defendant's responsibility to request that the exclusion order be narrowed or entirely vacated following the testimony of the prosecutrix. He says that the defendant's failure to raise timely objection to the continuation of the exclusion once the victim had completed her testimony constituted a waiver of the objection and thus the court below did not commit reversible error in barring the public from the courtroom during the entire trial. We do not agree either that the wholesale exclusion during the victim's testimony was proper or that defendant thereafter waived his right to have the public admitted for the balance of the trial.

Initially, we must focus on the dimensions of the exclusion order. The sweep of the trial court's ruling was broad. Although the prosecutor's motion was narrow, in part, addressed to exclusion "at least while the victim [was] testifying", the court's directive was not so confined. The court decided that because of "the type of case we are about to consider", all spectators should be barred. From the record, we can determine that the following persons whose presence was essential to the conduct of the trial remained in the courtroom during the hearing: the judge, the jury, the prosecutor, the accused and his attorney, and the court reporter. Although not revealed by the record, we can assume that a court clerk and a security officer also may have been in attendance. Counsel agree, however, that from this record we must conclude that no other persons, except the witnesses while testifying, were allowed to enter the courtroom at any time during the trial. Thus we have a case in which a blanket exclusion order eliminated from attendance all of the following classes of persons who may have attended but for the court's action: friends and relatives of the accused, attorneys having no connection with the case, representatives of the news media, and members of the general public.

Consequently, we are not called upon to decide in this case which, if any, of the foregoing categories of persons should have been allowed to remain for the trial to have been a "public" trial. Some courts have said that, in addition to the actual participants, the accused is at least entitled to have his friends and relatives remain during the entire trial. Note, *The Right to a Public Trial in Criminal Cases,* 41 N.Y.U. L. Rev. 1138, 1141 (1966). Other courts have embraced a broader approach and have said that if attendance is restricted to a limited class of people, the trial is not "public" because it is one which the public is not free to attend. *Id.* This court has not particularized those classes of persons who may properly be excluded without impairing the nature of a public trial either from the constitutional standpoint or under Code § 19.2-266. It has been noted that insofar as a public trial is concerned, there is a significant difference between a trial to which *"everyone is admitted except* a designated few, and one . . . from which *everyone is excluded but* a limited class." *People* v. *Jelke,* 308 N.Y. 56, 66, 123 N.E.2d 769, 774 (1954). *See generally* Annot., 48 A.L.R.2d 1436 (1956). To this point in time, we have only decided generally that a "'public trial' is a trial which is not limited or restricted to any particular class of the community, but is open to the free observation of all." *Jones* v. *Peyton,* 208 Va. at 380, 158

S.E.2d at 181. *See Caudill* v. *Peyton*, 209 Va. 405, 408, 164 S.E.2d 674, 676 (1968).

The foregoing discussion about what we are not deciding serves to emphasize that which we do decide. The expansive order in the present case was unlimited and applied to all spectators without exception during the child's testimony as well as during the testimony of the 12 other witnesses who took the stand. While some courts impose a limitation on the right to a public trial ˙by excluding the general public when children are required to testify to sordid facts, *see United States* v. *Kobli*, 172 F.2d 919, 923 (3rd Cir. 1949), that circumstance was not the basis for the order here. The reason for the exclusion was "the type of case" the court was about to consider. Such order was too broad. The mere fact that the prosecution was for the crime of incest was insufficient standing alone to justify the wholesale banishment of spectators which occurred. On these facts, we hold that the act of clearing the courtroom violated defendant's constitutional right to a public trial.

In addition, we do not think defendant waived his right by failing to renew his objection after the victim had finished her testimony, especially in view of the positive, unequivocal and sweeping ruling of the trial court. The defendant initially made a clear, specific objection to the motion for closing the courtroom and, in view of the court's decision based on the nature of the case, was not required to renew the objection thereafter. We are not persuaded by *Geise* v. *United States*, 262 F.2d 151 (9th Cir. 1958), *reh. den.*, 265 F.2d 659, *cert. denied*, 361 U.S. 842 (1959), relied on by the Commonwealth. In that case, a collateral attack on the judgment of conviction, the appellate court on rehearing said that defendant could not complain of the failure of the trial court to revoke its exclusion order after the minor witness in a rape case had testified because defendant made no such request. But the primary holding of the *Geise* court was that defendant had, in fact, been afforded a public trial when, even though all spectators were excluded, various classes of persons were allowed to remain in attendance, *i.e.*, members of the press, members of the bar, relatives and friends of defendant, and relatives and friends of the minor witness.

Defendant has assigned two other errors upon which we shall comment since there will be a new trial and the issues may arise again.

First, defendant argues the trial court erred in permitting defendant's wife to testify as a witness for the Commonwealth.* Defendant relies on Code § 19.2-271.2 which, under certain circumstances in criminal cases, prevents one spouse from testifying against the other without the other's consent. But, contrary to defendant's contention, we think an exception in the statute applies which permits such testimony "in the case of a prosecution for an offense committed by one [spouse] . . . against a minor child of either . . . ." Defendant argues that the crime was not "against" the child because the essential elements of incest do not include force, violence, lack of consent or assault and, further, because the trial court instructed the jury that the victim was an accomplice in the commission of the offense; defendant says one cannot be an accomplice and at the same time be a victim. We disagree.

We hold that this offense was committed "against" this minor child within the meaning of the foregoing statutory exception. The Commonwealth's evidence showed that the daughter's participation in the crime resulted from defendant's intimidation and coercion of her. This offense was as much "against" her as if defendant had assaulted or maimed her. To hold otherwise under these facts would render the exception utterly meaningless. *Brown v. Commonwealth*, 208 Va. 512, 516, 158 S.E.2d 663, 666-67 (1968), relied on by defendant, does not express a contrary view. There, the victim was not a minor and the exception dealt with here was not pertinent in that case.

Finally, defendant contends the trial court admitted certain irrelevant and prejudicial testimony concerning incidents involving defendant and the victim. Three weeks after the offense, the prosecutrix was placed in a foster home within Giles County, where she had formerly resided with her parents. During the month following the placement, the testimony showed that the accused went to the foster home, attempting to see his daughter who was inside. The foster father would not allow defendant to see the child. On another occasion, about six months after the offense, defendant drove a motor vehicle in a reckless manner dangerously close to a vehicle in which the victim was riding. The testimony showed that during these incidents, and others taking place during

---

*While testifying for the Commonwealth, the wife merely identified the defendant as her husband and the father of the victim. Subsequently, when called to the stand by defendant, the wife gave extensive testimony on the merits of the case favorable to her husband.

the same time frame, the victim became nervous and shook violently because of fright.

The Commonwealth argues this evidence was admissible as "acts of intimidation [which] were corroborative of the prosecutrix' testimony and [which] tended to explain the relationship between the defendant and the prosecutrix." We do not agree. The probative value, if any, of such evidence, remote in time and circumstance to the commission of the subject crime, is far outweighed by the prejudicial nature of such evidence, here involving the alleged commission of the offenses of trespass and reckless driving. *See* C. McCormick, *Law of Evidence* § 190, at 453 (2d ed. E. Cleary 1972). Thus, while the admission of such testimony was harmless on this record, upon retrial such evidence should be excluded.

Because the trial court erred in failing to provide defendant with a public trial, we will reverse the conviction and remand the case for a new trial.

*Reversed and remanded.*